UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHERRY LYNN REESE, ) | |
| ) | CASE NO. C13-5351-RSL-MAT |
| Plaintiff, ) | |
| ) | |
| v. ) | REPORT AND RECOMMENDATION |
| ) | RE: SOCIAL SECURITY |
| CAROLYN W. COLVIN, Acting ) | DISABILITY APPEAL |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff Sherry Lynn Reese proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends that this matter be reversed and remanded for additional administrative proceedings.

//

//

//

REPORT AND RECOMMENDATION
PAGE -1

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1970.[1]  She received her GED, and previously worked as a pet grooming manager, retail cashier, and barista. (AR 59-60, 242-56.)

Plaintiff filed applications for DIB and SSI, alleging disability beginning February 1, 2009. (AR 192-205.) Her applications were denied at the initial level and on reconsideration, and Plaintiff requested a hearing. (AR 101-04, 106-12, 116-18.)

On August 9, 2011, ALJ Rudolph M. Murgo held a hearing, taking testimony from Plaintiff and a vocational expert (VE). (AR 54-86.) On December 2, 2011, the ALJ held a supplemental hearing, taking testimony from Plaintiff, a medical expert, and a VE. (AR 36-53.) On January 12, 2012, the ALJ issued a decision finding Plaintiff not disabled. (AR 19-27.)

Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on March 20, 2013 (AR 1-7), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The ALJ followed the five-step sequential evaluation process for determining whether

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must be determined whether the claimant is gainfully employed.  The ALJ found Plaintiff had not engaged in substantial gainful activity since February 1, 2009, the alleged onset date.  (AR 21.)  At step two, it must be determined whether a claimant suffers from a severe impairment.  The ALJ found Plaintiff's status post disc herniation with fusion, chronic pain syndrome, morbid obesity, degenerative disc disease of the cervical spine, chronic costochondritis, fibromyalgia syndrome, major depressive disorder, posttraumatic stress disorder, and borderline personality traits to be severe.  (AR 21.)  Step three asks whether a claimant's impairments meet or equal a listed impairment.  The ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment.  (AR 22-23.)

      If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant demonstrated an inability to perform past relevant work.  The ALJ found Plaintiff able to perform less than the full range of light work: she can lift and carry 15 pounds occasionally and 10 pounds frequently.  She can sit eight hours and stand/walk four hours out of an eight-hour day, with a sit/stand option.  She is limited to occasional overhead lifting bilaterally.  She cannot climb ropes, ladders, scaffolds, stairs, or ramps, and she can occasionally balance, stoop, kneel, crouch, and crawl.  She should avoid exposure to hazards, heavy equipment, and heights.  She cannot interact with the public and can have only occasional interaction with coworkers and supervisors.  (AR 23.)  With that assessment, the ALJ found Plaintiff unable to perform her past relevant work.  (AR 25-26.)

      The ALJ proceeded to step five of the sequential evaluation, where the burden shifts to

the Commissioner to demonstrate that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy.  With the assistance of VE testimony, the ALJ found Plaintiff capable of performing other representative jobs, such as small product assembler and extruder machine operator.  (AR 26-27.)

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred by (1) failing to account for all limitations identified by consultative examiner Terilee Wingate, Ph.D., and failing to provide sufficient reasons to do so; (2) crediting the testimony of medical expert Julie Frederick, Ph.D.; and (3) discounting her credibility.[2]  She asks that the ALJ's decision be reversed and her claim remanded for an award of benefits or, in the alternative, for further proceedings.  The Commissioner argues the ALJ's decision is supported by substantial evidence and should be affirmed.

## Medical Opinions

Where contradicted, a treating or examining physician's opinion may not be rejected

---

[2] Plaintiff also alleges that the ALJ's RFC assessment and VE hypothetical were incomplete (Dkt. 16 at 9-10), but in doing so merely reiterates previous arguments.  Thus, the Court will not address this argument as a separate assignment of error.

without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester v. Chater*, 81 F.3d 821, 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). Plaintiff argues that although the ALJ purported to give "great weight" to Dr. Wingate's opinion, he actually failed to account for all of the limitations she identified and did not provide specific, legitimate reasons to discount those portions of the opinion. Medical expert Dr. Frederick reviewed Dr. Wingate's opinion and explained how she interpreted it regarding Plaintiff's functionality, and the ALJ indicated that he found her testimony to be credible. (AR 25.) Because the opinions of Dr. Wingate and Dr. Frederick are intertwined, the Court will address them together.

Dr. Wingate's functional analysis and medical opinion statement reads:

> Ms. Reese is able to understand, remember and learn simple and some complex tasks. Due to depressed mood, anxiety and chronic pain she has difficulty sustaining a routine daily or weekly work schedule without interruption from her depression or anxiety. She is tense and fearful and she has poor stress tolerance. She has sufficient judgment to make some routine work decisions and avoid work hazards. She is fearful in public places and she will not go into public settings alone, so she should avoid working with the public. She has one friend and has some contact with her family, however, she would not work well with a lot of coworkers. She might be able to interact with a supervisor and 1-2 coworkers. She reported that she is [capable] of handling money with the help from her spouse.

(AR 953.) Dr. Frederick testified that she interpreted Dr. Wingate's opinion regarding Plaintiff's "difficulty sustaining a routine daily or weekly work schedule without interruption from her depression or anxiety" to mean that she "would need a very predictable work schedule" and "work that was very predictable and routine." (AR 42.) She further elaborated on her interpretation of Dr. Wingate's opinion, explaining that although Dr. Wingate factored in Plaintiff's chronic pain when assessing Plaintiff's ability to sustain a work schedule, she

01  believed chronic pain was a physical (rather than mental) issue. (AR 42.) Dr. Frederick also

02  indicated that she believed Plaintiff's social limitations were "moderate" as to coworkers and

03  supervisors, and precluded work with the public. (AR 41.)

04       The ALJ indicated that he credited the opinions of Dr. Wingate and Dr. Frederick, and

05  found that Plaintiff's mental limitations required, *inter alia*, restriction to "occasional"

06  interaction with coworkers and supervisors, and "structured work with little change." (AR 23,

07  25, 51.) According to Plaintiff, the ALJ erred in (1) failing to restrict the *number* of

08  coworkers and supervisors that Plaintiff can interact with, because Dr. Wingate's opinion was

09  more specific than the RFC assessment; (2) failing to include a restriction on Plaintiff's ability

10  to sustain a work schedule without interruption, as indicated by Dr. Wingate, in the RFC

11  assessment; (3) failing to discount Dr. Frederick's opinion on the grounds that she improperly

12  factored out the effect of Plaintiff's chronic pain when assessing her limitations.

13       As to the first allegation, the Commissioner argues that the ALJ's RFC assessment is

14  consistent with Dr. Wingate's opinion regarding social limitations, because a limitation to

15  "occasional" interaction with coworkers and supervisors adequately accounts for an inability

16  to work with more than 1-2 coworkers. As support for this argument, the Commissioner cites

17  *Blaser v. Astrue*, 2010 WL 887306, at *12 (D. Or. Mar. 10, 2010), but her parenthetical

18  summary of the case is inaccurate. In *Blaser*, a State agency consultant found that the

19  claimant could work "with coworkers on an occasional basis but will do better if work with

20  one or two on a frequent basis," and cannot work "closely" with the public and "should have

21  minimal routine coworker contact." *Id.*, 2010 WL 887306, at *2, *12. The ALJ did not

22  include a limitation on coworker interaction in his RFC assessment, because he found that

REPORT AND RECOMMENDATION  
PAGE -6

limitation to be inconsistent with the record. *Id.*, 2010 WL 887306, at *13. The claimant argued on appeal that the ALJ should have included a "minimal co-worker contact" in his VE hypothetical, and the court found that because the ALJ properly found that this limitation was not supported by the record, it did not need to be included in the VE hypothetical. *Id.* The court did not hold that "a restriction to 'very minimal' coworker contact accommodated the inability to work with more than one or two coworkers on a frequent basis or more coworkers on an occasional basis," as described by the Commissioner. Dkt. 18 at 7. The State agency consultant (not the ALJ) in *Blaser* found that the claimant could work with coworkers on an occasional basis; he also explicitly found that a restriction to working with 1-2 coworkers on a frequent basis was distinctly optimal. 2010 WL 887306, at *2. Thus, *Blaser* does not stand for the proposition that a restriction to "occasional" coworker interaction accommodates an inability to work with more than 1-2 coworkers.

In this case, both Dr. Wingate (AR 953) and Dr. Frederick (AR 41) opined that Plaintiff could work only with a limited number of coworkers. The ALJ did not incorporate such a limitation, but instead limited only the amount of time that Plaintiff could work with coworkers, without explaining how this limitation could have accommodated the social limitations identified by experts whose opinions he purported to credit. Because the ALJ failed to provide specific and legitimate reasons to exclude the social limitations identified in these medical opinions, on remand[3] the ALJ shall reconsider the opinions of Dr. Wingate and

---

[3] Plaintiff contends that this case should be remanded for payment of benefits, but Dr. Wingate's and Dr. Frederick's opinions — even if credited — do not necessarily establish that Plaintiff is disabled, and thus remand for additional proceedings is appropriate. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).

Dr. Frederick regarding Plaintiff's social limitations.

Plaintiff's remaining two arguments converge regarding her limitations in the ability to sustain a work schedule, and are both rooted in a mischaracterization of Dr. Wingate's opinion. Dr. Wingate stated that Plaintiff's "depressed mood, anxiety and chronic pain" make it difficult for her to sustain a normal work schedule "without interruption from her depression or anxiety." (AR 953.) Dr. Frederick interpreted that opinion to mean that a predictable work schedule and routine job tasks would accommodate Plaintiff's difficulty in sustaining work (AR 42), and the ALJ explained that he credited Dr. Frederick's interpretation of Dr. Wingate's opinion. (AR 25.) Although Plaintiff contends that Dr. Frederick erroneously factored out the effect of Plaintiff's chronic pain when considering Dr. Wingate's opinion, Dr. Wingate's opinion itself indicates that Plaintiff's potential schedule interruptions are caused by depression and anxiety (not chronic pain). (AR 953.) Because Dr. Frederick reasonably interpreted Dr. Wingate's opinion, and the ALJ provided a reasonable explanation for his interpretation of Dr. Frederick's and Dr. Wingate's opinion regarding Plaintiff's difficulty sustaining work, Plaintiff has not established error. *See Morgan v. Comm'r of the Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

### Credibility

Plaintiff contends that the ALJ erred in discounting her credibility. In discussing the credibility of Plaintiff's allegations, the ALJ summarized medical evidence (showing improvement with treatment and less limiting restrictions than Plaintiff alleges) and cited

Plaintiff's daily activities (shopping, preparing meals, attending her sons' sporting events, and completing light chores) that undermine her allegations. (AR 23-25.) According to Plaintiff, neither of the ALJ's reasons is sufficiently clear and convincing. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The basis for Plaintiff's challenge is not entirely clear. Plaintiff admits that she "may have overstated her specific functional limitations on lifting or walking, for example[.]" Dkt. 16 at 8. Plaintiff nonetheless argues that the ALJ should have credited Dr. Wingate's opinion as to her mental limitations, and should have found her pain to be debilitating given her medication regime. Dkt. 16 at 8-9. As explained *supra*, the Court agrees that the ALJ erred in assessing Dr. Wingate's opinion, but this error has no bearing on the adverse credibility determination. Nor do medication prescriptions alone establish any particular functional limitations, especially where Plaintiff's own statements suggest that using pain medication increased her activity level without side effects. (AR 1038.) Plaintiff has not shown that the ALJ improperly disregarded any of her own testimony, and thus the adverse credibility finding should be affirmed.

## CONCLUSION

For the reasons set forth above, the Court recommends this matter should be REVERSED and REMANDED for additional proceedings.

DATED this 15th day of November, 2013.

Mary Alice Theiler
Chief United States Magistrate Judge